## GARDNER v. SOVEREIGN CAMP, W. O. W., et al. (No. 8428.)

(Court of Civil Appeals of Texas. Dallas. Dec. 18, 1920. Rehearing Denied Jan. 29, 1921.)

1. **Insurance ⬅819(1)—Evidence held not to prove change of beneficiary.**

In action on life policy involving question of whether insured had authorized change of the beneficiary by substitution of his wife's name in place of that of his mother, evidence *held* insufficient to sustain judgment for the mother.

2. **Insurance ⬅818(1)—Letter held inadmissible on issue of whether insured had substituted his wife for his mother as beneficiary.**

In action on life policy issued by mutual benefit association involving issue of whether insured had authorized change of beneficiary by substitution of wife's name for that of mother, a letter, written by insured to his sister, from which a portion had been torn, *held* inadmissible.

Appeal from Dallas County Court; W. L. Thornton, Judge.

Suit by Mrs. Toy Etta Gardner against the Sovereign Camp, Woodmen of the World, and another. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

John T. Spann and Allen & Allen, all of Dallas, for appellant.

Walter Collins, of Hillsboro, and E. B. Stroud, Jr., Alex. W. Spence, and Spence, Haven & Smithdeal, all of Dallas, for appellees.

RAINEY, C. J. Appellant sued appellee to recover $1,000 on an insurance contract issued to appellant's deceased husband's mother, Mrs. J. E. Gardner, before deceased's marriage to appellant. After the policy was issued C. C. Gardner was married to appellant and went to France, where he died while in the United States army. Just before he died he wrote to his wife, Mrs. Toy Etta Gardner, and inclosed an order to Mr. Quest, the secretary of the said camp at Osceola, Hill county, Tex., which order was mailed to the secretary of Osceola Camp, and which order was received by said secretary. Said order read as follows: "Mr. A. Quest. I want my Woodman policy changed in favor of my wife." Signed by C. C. Gardner. Appellant

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

alleged that said letter and order had been lost, and called upon the defendant to produce the same, or that secondary evidence of its contents would be proven. She alleged that Mrs. J. E. Gardner was the beneficiary before her marriage with deceased, but that the policy was afterwards changed to appellant by her husband while in France.

Mrs. J. E. Gardner, mother of deceased, answered by general demurrer and general denial, and specially answered that said certificate of insurance was issued to her as beneficiary; that C. C. Gardner never changed the policy to Mrs. C. C. Gardner; that deceased never changed the beneficiary in said certificate, and never complied with the requirements of said Woodmen of the World, and no change was ever made. The Woodmen of the World answered that it was a mere stakeholder, and by consent of the parties paid into the registry of the court said amount to be paid to the successful party in the suit. A judgment resulted for defendant, and appellant appeals to this court.

The court submitted the case to the jury on special issues, which were answered in favor of defendant, and judgment was rendered accordingly. At the conclusion of the evidence the plaintiff asked the court to give a peremptory instruction for her, which the court refused to do, and of this she complains.

Plaintiff proved that the insurance certificate was lost, and traced it into the hands of Mrs. J. E. Gardner's son-in-law, A. E. Bird, but she proved the contents of the order which she had received from her husband, which letter had been properly censored in France. This order she inclosed in a letter to Mr. Quest, the regular secretary of the Osceola Camp of Woodmen of the World. On receiving this letter and inclosure the secretary turned it and the order over to A. E. Bird, son-in-law of Mrs J. E. Gardner, but the secretary remembers nothing of the contents of the order, nor does he deny that the order authorized him to change the policy to Mrs. C. C. Gardner. In fact he claims to remember nothing contained in the order, though he testified to getting the letter and an inclosure mailed to him by appellant. A. E. Bird admits getting from Quest the letter and inclosure and carrying it to the home of Mrs. J. E. Gardner, but testified that he did not read the letter of Mrs. C. C. Gardner or the order from C. C. Gardner.

Mrs. J. E. Gardner testified that the letter of Mrs. C. C. Gardner was brought to her home by A. E. Bird; "that the order was about as plaintiff said it was, and that the writing looked like son's"; that she did not read the letter or order, as they were lost; that Mrs. A. E. Bird read the letter to her. Mrs. Bird did not testify in the case.

None of the witnesses who testified for the defendant testified that the order proven by plaintiff did not exist, or that she turned the letter over to the secretary of the lodge; and, he having stated that at that time it was his duty to make changes of certificates upon proper requests, he should have performed that duty, and not have turned plaintiff's letter over to her son-in-law.

[1] The plaintiff testified fully in regard to the letter she received from her husband relative to changing the certificate to her, and the testimony of the defendant is far from satisfactory. The judgment will therefore be reversed and the cause remanded in order to give the parties an opportunity to fully develop the case, especially since Mrs. Bird, who Mrs. J. E. Gardner testified read the letter to her, did not testify in the case.

The court admitted in evidence the following letter of C. C. Gardner to his sister, which was objected to by plaintiff, as follows:

"Knights of Columbus, Overseas Service.

"On Active Service with American Expeditionary Forces.

A P O 711.   Date 12/7/19.

"Mrs. Ida Dalton. Dear Sister: How are you today I am well and hope you the all the same. I wish I could see you all tell those to deare little children I said hello I wish I were there to hug and kiss them them both I have thought of mother an all of you this week untill I can't help but believe something is rong but I hope not for I am expecting to come home some of these times and hope that it wont be long. I havent heard from eny of you all in about two are three weeks I had a letter from Toy and Vera last week and I had to letters from Monroe this week I hear from him often and I write to him that is all of the pleasure I have so I try to do my part of writing to everybody I can think of but will I don't get very much mail well some of these time I will be back and then I don't think I will have to leave eny more soon will I guess H B is getting his land ready for another crop isent he I wish I were there to help him farm well Ida is mother well and where is she staying mostly I thought maybe Toy would come back down there but I don't guess (rest of lines torn out) will be cahse h (this part torn out) made her thin (this part torn out) you all we (this part torn out) me leave (this part torn out) to mother but I wrote and told her that was my own business and if I have to go to Okla after her when I come back I am going to tell her old dad what I think and I guess she will be there when I get home I wish I would get in the same Company Monroe is in but I would stay over her as long as he did I would hate to leave him over here but there not a chance for me to transfer to him well sis ans soon and let me know how you all are I will close so be good and tell mother Hello for me well kiss the children for me tell H B. to write to me good night.

"cpl C. C. Gardner, H D Co 133 F A
"U. S. Army, American E. F."

"Be it remembered that upon the trial of the above-entitled cause the defendant offered in evidence the following letter from deceased

to his sister Mrs. Ida Dalton, which letter was torn (clerk), and defendant in connection with said letter offered the testimony of Kirk Dalton as to the contents of the torn portion, which testimony was as follows:

"There, but I don't guess" (that is tore out; supplied part:) "she" (in the letter:) "will." The rest is tore off (on this line); (supplied, on this line:) "her people have" (in the letter:) "her thin(k)." (Witness: "There is the line I don't remember") "you all" (the rest of the line is tore out; supplied:) "that is the cause of" (in the letter:) "me leav"(ing, supplied:) "my insurance to mother."

"The only explanation being given by the witness for the failure to produce the torn portion of the letter being that it was torn and he could not find the torn piece, although he and his wife had made diligent search. He did not know when it was torn nor by whom; that he had read the letter just before Mrs. Toy Etta Gardner visited his house, and just after she left he found it torn. He admitted, however, on cross-examination that so far as he knew Mrs. Toy Etta Gardner had never seen the letter, and Mrs. Toy Etta Gardner swore that she had never seen said letter, or heard of it until it was produced on the trial.

"To the introduction of which letter as well as the testimony of said witness as to the contents of the torn portion, plaintiff at the time objected for the following reasons:

"First. That the letter was wholly irrelevant, and had no bearing on any issue involved in this case; second, that witness had not sufficiently explained the absence of the torn portion of the letter to admit parol evidence of its contents; and third, that the testimony of said witness as to the contents of said torn portion was unintelligible.

"Which said objections were overruled by the court, and the plaintiff then and there excepted to such ruling of the court, and now presents this her bill of exception thereto, and asks that the same be allowed, which is accordingly done.

"Approved January 21, 1920.

"W. L. Thornton, Judge."

[2] We are of the opinion that the above letter should have been excluded from the jury.

The judgment is reversed, and the cause remanded.

